UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ERWIN FERNANDO CALDERON,
and FELIPE RODRIGUEZ,
on behalf of themselves and all
others similarly-situated,

                           Plaintiffs,

           -against-

MULLARKEY REALTY, LLC, DENIS
P. MULLARKEY LLC, and DENIS P.
MULLARKEY, in his individual and
professional capacities,

                        Defendants.
----------------------------------------------------------------X

**AMENDED
COMPLAINT**

**1:14-cv-2616 (PKC) (RML)**

Jury Trial Demanded

Plaintiffs ERWIN FERNANDO CALDERON (hereinafter, "Mr. Calderon") and FELIPE RODRIGUEZ (hereinafter, Mr. Rodriguez) (collectively as "Named Plaintiffs"), on behalf of themselves and all others similarly-situated (collectively as "FLSA Plaintiffs"), by and through their attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for their Amended Complaint against MULLARKEY REALTY, LLC, DENIS P. MULLARKEY LLC, and DENIS P. MULLARKEY (hereinafter, "Mr. Mullarkey"), an individual (collectively as "Mullarkey Realty" or "Defendants"), allege upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

1.     This is a civil action for damages and equitable relief based upon violations committed by Defendants of Named Plaintiffs' rights guaranteed to them by: (i) the overtime provisions of the Fair Labor Standards Acts ("FLSA"), 29 U.S.C. § 207(a); (ii) the FLSA's

1

minimum wage provisions, 29 U.S.C. § 206(a); (iii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160; N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 142-2.2; (iv) the NYLL's minimum wage provisions, NYLL § 652(1); (v) the requirement that employers furnish employees with wage statements containing specific categories of accurate information under NYLL § 195(3); (vi) the FLSA's anti-retaliation provisions, 29 U.S.C. § 215(3); (vii) the NYLL's anti-retaliation provisions, N.Y. Lab. Law § 215(1); and (viii) any other claims(s) that can be inferred from the facts set forth herein.

2.      Named Plaintiffs bring this lawsuit as a collective action pursuant to the provisions of 29 U.S.C. § 216(b), on behalf of themselves and all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of Defendants' violations of the FLSA.

## PRELIMINARY STATEMENT

3.      Named Plaintiffs worked for Defendants as building maintenance employees performing maintenance work and repairs at two large residential apartment buildings for many years prior to their termination in 2013.   Throughout Named Plaintiffs' employment, as described below, Defendants required them to regularly work far in excess of forty hours per week.  However, Defendants failed to pay Named Plaintiffs an overtime rate of pay for those hours worked per week in excess of forty as required by the FLSA, the NYLL, and the NYCCRR.  In fact, as described in detail below, Defendants failed to pay Named Plaintiffs at any rate of pay, let alone at the overtime or minimum wage rates of pay, for many of the hours that Named Plaintiffs worked as required by the FLSA and the NYLL.  In addition, Defendants failed to furnish Named Plaintiffs with accurate and/or complete wages statements as required by the NYLL.

4.     Making matters worse, less than three months after Plaintiffs filed their Complaint, the Defendants retaliated against Plaintiff Calderon for engaging in protected activity under the FLSA and NYLL and filed a state court complaint against Plaintiff Calderon.

## JURISDICTION AND VENUE

5.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq.*  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all state law claims.

6.     Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(ii), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b)(i), as one or more of Defendants reside within this judicial district.

## PARTIES

7.     At all relevant times herein, Named Plaintiffs are residents of the State of New York and are "persons" and "employees" entitled to protection as defined by the FLSA and NYLL.

8.     At all relevant times herein, Mullarkey Realty is a New York State limited liability company, which owns two large residential apartment buildings in Jamaica, Queens at which the Named Plaintiffs worked, and that is registered to receive process with the New York State Department of State at 86-80 188th Street, Hollis, New York, 11423.

9.     At all relevant times herein, Mr. Mullarkey is an individual, a resident of the State of New York, and a member of Mullarkey Realty.  Mr. Mullarkey's home address is the same as the address for Mullarkey Realty listed above.  Mr. Mullarkey, on behalf of himself and Mullarkey Realty, supervised and controlled the employment of Named Plaintiffs.  Mr. Mullarkey made all managerial decisions at the two buildings at issue.

10.     At all relevant times herein, all Defendants are "employers" and "persons" within the meaning of the FLSA and NYLL.  Additionally, the Defendants' qualifying annual business exceeds $500,000 and Defendants are engaged in interstate commerce within the meaning of the FLSA as they purchase maintenance supplies and equipment provided by outside vendors in the course of their business that originated in states other than New York, and rent apartments to hundreds of people from all over the United States and indeed the world, the combination of which subjects the Defendants to the FLSA's overtime requirements.  Furthermore, all of Defendants' employees, including Named Plaintiffs and FLSA Plaintiffs, are individually engaged in interstate commerce, as they routinely work with supplies and equipment that have been and continue to be moved in interstate commerce.  This independently subjects Defendants to the overtime and minimum wage requirements of the FLSA with respect to Named Plaintiffs and FLSA Plaintiffs.

## COLLECTIVE ACTION ALLEGATIONS

11.     Named Plaintiffs seek to bring this suit to recover from Defendants their full payment of all unpaid minimum wages, overtime compensation and liquidated damages pursuant to the applicable provisions of the FLSA, pursuant to 29 U.S.C. § 216(b), on their own behalf as well as those in the following class:

> Current and former employees of Defendants who, during the applicable FLSA limitations period, performed any work at any of Defendants' locations as non-managerial employees who give consent to file a claim to recover damages for (1) overtime compensation that is legally due to them for hours worked in excess of forty per week; and/or (2) minimum wages that are legally due to them ("FLSA Plaintiffs").

12.     Defendants treated Named Plaintiffs and all FLSA Plaintiffs similarly in that Named Plaintiffs and all FLSA Plaintiffs: performed similar tasks, as described in the

"Background Facts" section below; were subject to the same laws and regulations; were paid in the same or similar manner; were not paid at an amount equal to the minimum hourly required rate of pay per hour worked; were required to work in excess of forty hours each workweek; and were not paid the required one and one-half times their respective regular rates of pay for all overtime hours worked per workweek.

13.     At all relevant times, Defendants are and have been aware of the requirement to pay Named Plaintiffs and all FLSA Plaintiffs at an amount equal to the minimum hourly required rate of pay per hour for all hours worked, as well as the rate of one and one-half times their respective rates of pay for all hours worked each workweek above forty, yet they purposefully chose not to do so.

14.     Thus, all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees minimum wage and overtime compensation for all hours worked per workweek.

## BACKGROUND FACTS

### Defendants Mullarkey Realty, Denis P. Mullarkey LLC, and Denis P. Mullarkey

15.     Mullarkey Realty is the owner of two large residential apartment buildings located at 89-07 169th Street and 89-21 169th Street, in Jamaica, Queens.  Each building contains dozens of apartments.  There are a total of over 135 apartments between both buildings.

16.     Denis P. Mullarkey LLC is a limited liability corporation, incorporated in the state of New York, which employed Plaintiffs.

17.     Mr. Mullarkey is a member of Mullarkey Realty and Denis P. Mullarkey LLC, and in that capacity, makes all managerial decisions for the two apartment buildings.

18.     Mr. Mullarkey set and approved changes to Named Plaintiffs' rates of pay, work schedules, job duties, and all other terms and conditions of Named Plaintiffs' employment. Mr. Mullarkey had the authority to terminate Named Plaintiffs' employment with the Defendants, and ultimately terminated their employment.

19.     Mr. Mullarkey is a "hands-on" manager who diligently performs on-site supervision at both of the buildings on a daily basis. Mr. Mullarkey personally visits the buildings at least twice a day, at 7:00 a.m. and at 2:00 p.m. Mr. Mullarkey's home is only blocks away from the buildings, and in addition to the two daily visits, Mr. Mullarkey makes many unannounced stops at the buildings at different times of the day and night to interact with employees and residents and perform routine on-site inspections.

### Named Plaintiff Erwin Fernando Calderon

20.     Mr. Calderon has been the superintendent of both buildings since approximately 1982 or 1983.

21.     During the limitations periods applicable to this lawsuit, in his capacity as superintendent of both buildings, Mr. Mullarkey required Mr. Calderon to work, and Mr. Calderon did in fact work, from 8:30 a.m. to 5:00 p.m., Mondays to Fridays. Additionally throughout that time period, Mr. Mullarkey required Mr. Calderon, at the conclusion of his daily shift, to remain physically on-site until 10:00 p.m. every weeknight in order to respond to routine service requests that residents made during those evening hours. Also throughout that time period, Mr. Mullarkey required Mr. Calderon to remain home at his apartment all day on each Saturday in order to respond to routine service requests that residents made during those Saturday hours. Lastly, while Mr. Mullarkey permitted Mr. Calderon to leave either his home or the work sites on Sundays or between 10:00 p.m. and 8:30 a.m. on weeknights/days, Mr.

Mullarkey required Mr. Calderon to be on-call at all times, twenty-four hours per day, seven days per week, in order to respond to routine service requests that residents made during those Sunday and graveyard hours.   Thus, the Defendants required Mr. Calderon to either work or be engaged to work, for every hour of every day during the limitations periods applicable to Mr. Calderon's claims.

22.     Between April 1, 2008 and June 31, 2013, the Defendants paid Mr. Calderon weekly by check.  The checks that the Defendants issued to Mr. Calderon each week did not accurately reflect the hours that Mr. Calderon worked each week, nor did they reflect the basis for computing Mr. Calderon's overtime rate of pay.

23.     Throughout this period, the Defendants paid Mr. Calderon for only his first thirty-seven and one-half hours of work that he performed each week.  Throughout this period, the Defendants did not pay Mr. Calderon at any rate of pay for any hours that he worked per week in excess of thirty-seven and one-half.

24.     Between April 1, 2008 and December 31, 2008, the Defendants paid to Mr. Calderon an hourly rate of $20.75 for his first thirty-seven and one-half hours of work each week.

25.     Between January 1, 2009 and December 31, 2010, the Defendants paid to Mr. Calderon an hourly rate of pay $21.41 for his first thirty-seven and one-half hours of work each week.

26.     Between January 1, 2011 and December 31, 2011, the Defendants paid to Mr. Calderon an hourly rate of $22.74 for his first thirty-seven and one-half hours of work each week.

27.     Between January 1, 2012 and December 31, 2012, the Defendants paid to Mr. Calderon an hourly rate of $23.41 for his first thirty-seven and one-half hours of work each week.

28.     Between January 1, 2013 and June 31, 2013, the Defendants paid to Mr. Calderon an hourly rate of $24.08 for his first thirty-seven and one-half hours of work each week.

29.     From July 2013 through his termination in November 2013, the Defendants, while still requiring him to work or be on-call when and as described above, did not pay Mr. Calderon any wages for any hours that he worked.

30.     Plaintiff Calderon commenced this action in the Court by filing a Complaint on April 24, 2014.

31.     On July 14, 2014, less than three months after Plaintiff Calderon sued them, and in retaliation for Plaintiff Calderon having brought this lawsuit alleging that the Defendants' payment practices with respect to them were in violation of the FLSA and NYLL, the Defendants filed a state law complaint against Plaintiff seeking affirmative relief of damages, equitable remedies, attorneys' fees, costs, and expenses.

32.     The Defendants' state complaint has no basis in law or fact, and the Defendants brought it as an act of retaliation meant to punish Plaintiff Calderon for asserting his rights under the FLSA and NYLL.

33.     The Defendants would not have brought the state complaint had Plaintiff Calderon not filed this action.

34.     The Defendants' state complaint operates to dissuade reasonable workers, including the Plaintiffs, from asserting their rights under the FLSA and the NYLL.

## **Named Plaintiff Felipe Rodriguez**

35.     Mr. Rodriguez has worked as a maintenance employee at both buildings since approximately 1999.

36.      During the limitations periods applicable to this lawsuit, in his capacity as a maintenance employee at both buildings, Mr. Mullarkey required Mr. Rodriguez to work, and Mr. Rodriguez did in fact work, from 8:00 a.m. to 5:00 p.m., Mondays to Fridays, and quite frequently until 7:00 p.m. on those days.   Additionally, throughout that time period, Mr. Mullarkey required Mr. Rodriguez to perform porter work between 7:00 a.m. and 11:00 a.m. on Saturdays.  Also throughout that time period, Mr. Mullarkey required Mr. Rodriguez to prepare the buildings' garbage for disposal twice a week, in the evenings.  It took Mr. Rodriguez approximately one and one-half hours each time he had to prepare the buildings' garbage for disposal.

37.     Thus, throughout this time period, the Defendants required Mr. Rodriguez to work, and Mr. Rodriguez did in fact work, between fifty-two and sixty-two hours per week.

38.     Between April 1, 2008 and June 31, 2013, the Defendants paid Mr. Rodriguez weekly by check.  The checks that the Defendants issued to Mr. Rodriguez each week did not accurately reflect the hours that Mr. Rodriguez worked each week, nor did they reflect the basis for computing Mr. Rodriguez's overtime rate of pay.

39.     Throughout this period, the Defendants paid Mr. Rodriguez for only either his first forty or forty-six hours of work that he performed each week, depending solely on the Defendants' mood on each payday.  Throughout this period, the Defendants did not pay Mr. Rodriguez at any rate of pay for any hours that he worked per week in excess of either forty or forty-six, depending again on the particular week.

40.     Between April 1, 2008 and December 31, 2008, the Defendants paid to Mr. Rodriguez an hourly rate of $12.74 for either his first forty or forty-six hours of work each week.

41.     Between January 1, 2009 and December 31, 2009, the Defendants paid to Mr. Rodriguez an hourly rate of pay of $13.02 for either his first forty or forty-six hours of work each week.

42.     Between January 1, 2010 and December 31, 2010, the Defendants paid to Mr. Rodriguez an hourly rate of pay of $13.31 for either his forty or forty-six hours of work each week.

43.     Between January 1, 2011 and December 31, 2011, the Defendants paid to Mr. Rodriguez an hourly rate of $13.60 for either his first forty or forty-six hours of work each week.

44.     Between January 1, 2012 and December 31, 2012, the Defendants paid to Mr. Rodriguez an hourly rate of $13.90 for either his first forty or forty-six hours of work each week.

45.     Between January 1, 2013 and June 31, 2013, the Defendants paid to Mr. Rodriguez an hourly rate of $14.17 for either his first forty or forty-six hours of work each week.

46.     Defendants terminated Mr. Rodriguez at the end of June 2013.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the FLSA*

47.     Named Plaintiffs and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

48.     29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate for any hours exceeding forty in a workweek.

49.     As described above, Defendants are employers within the meaning of the FLSA while Named Plaintiffs and FLSA Plaintiffs are employees within the meaning of the FLSA.

50.     As also described above, Named Plaintiffs and FLSA Plaintiffs frequently worked in excess of forty hours each week, yet Defendants failed to compensate Named Plaintiffs and FLSA Plaintiffs in accordance with the FLSA's overtime provisions.

51.     Defendants' actions were in willful violation of the FLSA.

52.     Named Plaintiffs and FLSA Plaintiffs are entitled to the difference between those amounts that Defendants paid to them and that which they were legally due under the FLSA's overtime provisions.

53.     Named Plaintiffs and FLSA Plaintiffs are also entitled to liquidated damages and attorneys' fees for Defendants' violation of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Minimum Wage Violations of the FLSA*

54.     Named Plaintiffs and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

55.     29 U.S.C. § 206(a) prescribes a minimum wage that employers must pay to their employees for each hour worked.

56.     As described above, Defendants are employers within the meaning of the FLSA while Named Plaintiffs and FLSA Plaintiffs are employees within the meaning of the FLSA.

57.     As also described above, Defendants did not compensate Named Plaintiffs and FLSA Plaintiffs for all hours worked at an hourly rate required by the FLSA.

58.     Defendants' actions were in willful violation of the FLSA.

59.     Named Plaintiffs and FLSA Plaintiffs are entitled to the difference between those amounts that Defendants paid to them and that which they were legally due under the FLSA's minimum wage provisions.

60.     Named Plaintiff and FLSA Plaintiffs are also entitled to liquidated damages and attorneys' fees for Defendants' violation of the FLSA's minimum wage provisions.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the NYLL and NYCCRR*

61.     Named Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

62.     NYLL § 160 and NYCCRR tit. 12, § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rate for any hours exceeding forty in a workweek.

63.     As described above, Defendants are employers within the meaning of the NYLL while Named Plaintiff are employees within the meaning of the NYLL.

64.     As also described above, Named Plaintiffs frequently worked substantially in excess of forty hours each week, yet Defendants failed to compensate Named Plaintiffs in accordance with the NYLL's and  NYCCRR's overtime provisions.

65.     Defendants' actions were in willful violation of the NYLL and NYCCRR.

66.     Named Plaintiffs are entitled to the difference between those amounts that Defendants paid to them and that which they were legally due under the NYLL's and NYCCRR's overtime provisions.

67.     Named Plaintiffs are also entitled to liquidated damages, attorneys' fees, costs, and pre-judgment and post-judgment interest for Defendants' violation of the NYLL's and NYCCRR's overtime provisions.

**FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Minimum Wage Violations of the NYLL*

68.     Named Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

69.     NYLL § 652(1) prescribes a minimum wage that employers must pay to their employees for each hour worked.

70.     As described above, Defendants are employers within the meaning of the NYLL while Named Plaintiffs are employees within the meaning of the NYLL.

71.     As also described above, Defendants frequently did not compensate Named Plaintiffs at their regular rate of pay for each hour they worked, as required by the NYLL.

72.     In fact, Defendants frequently did not compensate Named Plaintiffs at any rate of pay for each hour they worked, as required by the NYLL.

73.     Defendants' actions were in willful violation of the NYLL.

74.     Named Plaintiffs are entitled to the difference between those amounts that Defendants paid to them and that which they were legally due under the NYLL's minimum wage provisions.

75.     Named Plaintiffs are entitled to recover from Defendants their unpaid wages, attorneys' fees and costs, liquidated damages, and pre-judgment and post-judgment interest.

**FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

76.     Named Plaintiffs repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

77.     NYLL § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

78.     As described above, Defendants willfully failed to furnish Named Plaintiffs with accurate wage statements containing the criteria required under the NYLL.

79.     Pursuant to NYLL § 198(1-d), Defendants are liable to Named Plaintiffs in the amount of $100 for each failure of this sort.

80.     For their failures, besides the statutory penalties, Defendants are also liable to Named Plaintiffs for liquidated damages and attorneys' fees.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Retaliation in Violation of the FLSA*

81.     Plaintiff Calderon repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

82.     In filing and serving the initial Complaint in this action, Plaintiff Calderon engaged in a "protected activity," as defined by the FLSA, of which the Defendants were aware.

83.     In retaliation for that protected activity, the Defendants interposed the baseless state law complaint as described above.

84.     The Defendants' actions constitute retaliation in violation of the FLSA's anti-retaliation provisions, 29 U.S.C. § 215(3).

85.     For their actions, the Defendants are liable for all compensatory damages that they have caused or will cause Plaintiff Calderon to suffer in the future, including any economic or emotional harm, as well as punitive damages.

## SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Retaliation in Violation of the NYLL*

86.     Plaintiff Calderon repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

87.     In filing and serving the initial Complaint in this action, Plaintiff Calderon engaged in a "protected activity," as defined by the NYLL, of which the Defendants were aware.

88.     In retaliation for that protected activity, the Defendants interposed the baseless state law complaint as described above.

89.     The Defendants' actions constitute retaliation in violation of the NYLL's anti-retaliation provisions, NYLL § 215(1).

90.     For their actions, the Defendants are liable for all compensatory damages that they have caused or will cause Plaintiff Calderon to suffer in the future, including any economic or emotional harm, as well as punitive damages.

## DEMAND FOR A JURY TRIAL

91.     Pursuant to Federal Rule of Civil Procedure 38(b), Named Plaintiffs and FLSA Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiffs and FLSA Plaintiffs demand judgment against Defendants as follows:

a.     A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws.

b.     An order restraining Defendants from any retaliation against Named Plaintiffs for participation in any form in this litigation;

c.      All damages that Named Plaintiffs and FLSA Plaintiffs have sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Named Plaintiffs and FLSA Plaintiffs would have received but for Defendants' unlawful payment practices;

d.      Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

e.      All damages recoverable due to the Defendants' unlawful retaliatory conduct, including but not limited to any compensatory damages that these actions have caused Plaintiff Calderon – both economic and emotional – and punitive damages;

f.      Awarding Named Plaintiffs and FLSA Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

g.      Designation of Named Plaintiffs and their counsel as collective action representatives and counsel under the FLSA;

h.      Pre-judgment and post-judgment interest, as provided by law; and

i.      Granting Named Plaintiffs and FLSA Plaintiffs other and further relief as this

Court finds necessary and proper.

Dated:  Great Neck, New York
        November 3, 2014

                                        Respectfully submitted,

                                        BORRELLI & ASSOCIATES, P.L.L.C.
                                        *Attorneys for Plaintiffs*
                                        1010 Northern Boulevard, Suite 328
                                        Great Neck, New York 11021
                                        Tel. (516) 248-5550
                                        Fax. (516) 248-6027


                               By:        s/Michael J. Palitz
                                        MICHAEL J. PALITZ (MP 7883)
                                        MICHAEL J. BORRELLI (MB 8533)
                                        ALEXANDER T. COLEMAN (AC 8151)

17